IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES STANLEY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JON D. FISHER, et al. | : | NO. 11-3040 |

ORDER

AND NOW, this 17th day of December, 2013, upon careful and independent review of Magistrate Judge Lynne A. Sitarski's second Report and Recommendation ("R & R") (docket entry # 29) pursuant to our Order remanding the case to Judge Sitarski for reconsideration in light of Martinez v. Ryan, 132 S. Ct. 1309 (2012) (docket entry # 23), and Stanley's objections to the R & R (docket entry # 34), and the Court finding that:

(a) The convictions that Stanley challenges here arise from two burglaries, one on June 8, 2004, and one on June 27, 2004;

(b) Judge Sitarski detailed the factual history in her first R & R, see February 27, 2012 R & R, docket entry # 16, at 1-2, and we will not recount that history here, except to the extent our analysis requires us to do so;

(c) We thus note that the June 8, 2004 robbery involved a break-in to the house of an elderly couple, Anna Shenk and Morris Rickambach, during which the perpetrator put Rickambach in a headlock and then ordered Shenk into the kitchen, where he stole her purse, which contained three to four hundred dollars, Feb. 27, 2012 R&R at 1-2 (citing Commonwealth v. Stanley, No. CP-06-CR-3610-2004, at 3 (Pa. Ct. Com. Pl. Apr. 24, 2009));

(d) Shenk later viewed a photographic line-up and identified Stanley as the perpetrator, id. at 2;

(e) After a jury trial in front of the Honorable James M. Bucci of the Court of Common Pleas of Berks County, Stanley was convicted on June 1, 2006 of multiple counts for each incident, id.;

(f) On June 17, 2006, he filed a pro se request that the trial court consider several claims in the context of a post-conviction motion, id. at 3, and on August 2, 2006, Stanley's counsel filed a notice of appeal with the Pennsylvania Superior Court, id. at 3;

(g) On May 14, 2007, the Superior Court quashed Stanley's appeal as interlocutory and the trial court denied Stanley's pro se post-conviction claims on remand on July 19, 2007, id. at 4;

(h) On August 6, 2007, Stanley filed another notice of appeal with the aid of counsel, and on April 7, 2008, the Superior Court affirmed his conviction, id.;

(i) On July 23, 2008, Stanley filed a pro se petition for post-conviction relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541, et seq., id. at 5;

(j) In that petition, he argued that trial counsel was ineffective for failing to, inter alia, conduct his own investigation of the evidence presented against Stanley, call two witnesses who would have given exculpatory testimony, and object to the introduction of evidence that violated Stanley's rights under the Confrontation Clause, id. at 5 (citing Pet.'s PCRA Pet. 2-3);

(k) On July 14, 2008, the PCRA court appointed Osmer S. Deming, Esq. as counsel for Stanley, and on October 31, 2008, Deming filed a letter pursuant to Commonwealth v. Finley, 550 A.2d 313 (Pa. Super. Ct. 1988), certifying that he had reviewed the record and concluded that there were no issues to advance before the PCRA court, id. at 6;

(l)     The PCRA court dismissed the petition on January 5, 2009, id., and Stanley filed a pro se notice of appeal on January 22, 2009, which the PCRA court denied on April 24, 2009, id. at 6-7;

(m)    The Superior Court affirmed on October 8, 2009, and it denied Stanley's application for re-argument on December 17, 2009, id. at 7;

(n)     Stanley filed a petition for allowance of appeal, and the Supreme Court of Pennsylvania denied allocator on August 23, 2010, id.;

(o)     On May 5, 2011, Stanley filed a pro se habeas corpus petition in federal court pursuant to 28 U.S.C. § 2254, and on February 27, 2012, Judge Sitarski issued the first R & R, in which she recommended denying Stanley's petition in its entirety, see Feb. 27, 2012 R & R;

(p)     As we explain below, Judge Sitarski recommended denying Stanley's claims of ineffective of assistance of trial counsel on the ground that these claims had been procedurally defaulted;

(q)     Specifically, Stanley alleged that trial counsel was ineffective for failing to (1) move to dismiss Juror 11 after discovering that juror's bias; (2) raise a challenge under Batson v. Kentucky, 476 U.S. 79 (1986) where Stanley alleged that the only reason the trial court failed to replace Juror 11 was because the alternate juror was African-American; (3) object under Crawford v. Washington, 541 U.S. 36 (2004) where a deceased victim's statements were permitted as evidence; (4) conduct a pretrial investigation, discover the identity of witnesses, and call witnesses who would give exculpatory testimony; and (5) move for mistrial after Juror 11 rendered what Stanley alleges was a biased verdict, Feb. 27, 2012 R & R at 20 n.10;

(r) Judge Sitarski found that Stanley had not raised four of the claims listed above at all (in this numbering scheme, claims 1-2 and 4-5) in state court, and with regard to the claim that trial counsel was ineffective for failing to object under Crawford to the introduction of a deceased person's statement, claim 3 above, Judge Sitarski found that though Stanley raised this claim in his pro se PCRA petition, he failed to appeal it to the Superior Court, and so it was not exhausted, id. at 22;

(s) Judge Sitarski recommended excusing the exhaustion requirement with regard to these claims, however, because the statute of limitations for filing a PCRA had expired, and so it would have been futile for Stanley to try to raise these claims before the PCRA court, id.;

(t) She nevertheless found that there could be no federal habeas review of these claims because they were procedurally defaulted, as state procedural rules barred Stanley from seeking further relief in state courts, id. at 23;

(u) A petitioner can overcome procedural default by demonstrating both cause for the default and actual prejudice resulting from the alleged violation of federal law, see Coleman v. Thompson, 501 U.S. 722, 750 (1991);

(v) In order to show cause, a petitioner must show that "some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule", Murray v. Carrier, 477 U.S. 478, 488 (1986);

(w) Stanley alleged that "Post Conviction Counsel appointed by the state was the external factor that impeded Petitioner's ability to raise the claims herein in state court", Feb. 27, 2012 R &R at 24 (quoting Pet. Reply at 4);

(x) Judge Sitarski cited Maples v. Thomas, 132 S. Ct. 912, 922 (2012) for the proposition that "[n]egligence on the part of the prisoner's postconviction attorney does not qualify as 'cause'", and she concluded that in light of Maples and Coleman, "Petitioner's argument that his PCRA counsel failed to exhaust his claims is insufficient to establish cause", Feb. 27, 2012 R & R at 24-25, and the claims were thus procedurally defaulted;

(y) After Judge Sitarski issued the first R & R, the United States Supreme Court decided Martinez v. Ryan, 132 S. Ct. 1309 (2012), in which it held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of trial counsel", id. at 1315;

(z) Stanley objected to the R & R on the basis of Martinez, and we remanded it for re-consideration in light of that case;

(aa) We now consider Judge Sitarski's second R & R, in which she again concludes that Stanley has failed to show cause and prejudice for his default, and thus federal habeas review is unwarranted;

(bb) In Martinez, the Supreme Court explained that a showing of ineffective assistance of counsel at the collateral attack stage could constitute cause sufficient to merit review of a defaulted claim if "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984),"[1] and where a prisoner demonstrates "that the underlying ineffective-

---

[1] In Trevino v. Thaler, 133 S. Ct. 1911 (2013), the United States Supreme Court extended the Martinez rule for states where petitioners are explicitly prevented from bringing ineffective assistance of trial counsel claims until collateral proceedings to those situations where a "state['s] procedural framework, by reason of its design and operation, makes it highly unlikely in

assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit", Martinez, 132 S. Ct. at 1318;

   (cc) In order to establish ineffective assistance of counsel under Strickland, a petitioner must show both that counsel's performance was deficient and that such deficiency prejudiced the defense, Strickland, 466 U.S. at 687;

   (dd) Deficiency requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment', id., and in evaluating whether counsel was deficient, "[j]udicial scrutiny . . . is highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance", id. at 688-89;

   (ee) Under the prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different", and "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome", id. at 694; see also, e.g., Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (quoting Strickland on this point);

---

a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ." Trevino, 133 S. Ct. at 1921. In Pennsylvania, as the Pennsylvania Supreme Court has explained, "[a]s a result of the terms of the PCRA, limitations on the power of counsel to accuse himself of ineffectiveness, and a case such as Grant, which was powered in part by fidelity to the approach to ineffectiveness claims directed by the PCRA, claims of ineffective assistance of trial counsel in Pennsylvania generally are deferred to PCRA review and generally are not available on direct appeal." Commonwealth v. Holmes, -- A.3d --, 2013 WL 5827027, at * 20 (Pa. Oct. 30, 2013) (referring to Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002) (holding "that, as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review"). We will thus apply Martinez and Travino here.

(ff)  Here, the Strickland analysis guides both the determination of whether PCRA counsel was ineffective and the threshold determination of whether Stanley's underlying ineffective assistance of trial counsel claim has merit[2];

(gg)  Because we agree with Judge Sitarski's conclusion that Stanley's underlying ineffective assistance of trial counsel claim is without merit under Strickland -- though, as we discuss, we diverge in our reasoning on one point -- we will adopt her recommendations and deny Stanley's petition;

(hh)  We first consider the claims regarding Juror 11;

(ii)  Stanley argues that after Juror 11 told the Court she had a connection to the case, trial counsel was ineffective for failing to move to dismiss her and for later failing to move for a mistrial, Nov. 12, 2013 R & R at 4 (citing Habeas Pet. at 6);

(jj)  Judge Sitarski found that the record shows that "at the end of the first day of trial, Juror 11 contacted court administration to advise the court that she knew Theresa Clause, the daughter of burglary victim Anna Shenk", Nov. 12, 2013 R & R at 4 (quoting N.T. 6/1/06 at 121), and the next morning, Stanley's trial counsel moved without objection to have Juror 11 removed from the jury, id.;

---

[2] In Martinez, the Supreme Court seems to refer to the assessment of ineffective assistance of collateral attack counsel and the assessment of the merit of the underlying claim as separate inquiries. See, e.g., Martinez, 132 S. Ct. at 1318 (a prisoner may establish cause for default by showing that appointed collateral attack counsel was ineffective and "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one"). The test thus appears conjunctive, and so if Stanley fails to demonstrate that his underlying claim has merit, he fails to establish cause excusing his procedural default. We nevertheless note that if the underlying claim is not substantial, Stanley will also necessarily fail to show that PCRA counsel was ineffective, because counsel would not be deficient in failing to raise a meritless claim, nor would failing to raise such a claim prejudice petitioner.

  (kk) The Court then called Juror 11 into the courtroom for questioning, where she explained that she had not realized during voir dire that she knew anyone connected to the litigation, but when Ms. Clause entered the room with her mother, Juror 11 realized that Ms. Clause was married to Juror 11's uncle, id.;

  (ll) Juror 11 said that she did not know Ms. Clause well and had probably seen her about three times, id. at 5;

  (mm) Counsel asked Juror 11 if her acquaintance with Ms. Clause would make it impossible for her to render an impartial verdict, and she said it would not, and trial counsel withdrew his request to remove her, id.;

  (nn) Stanley argues that counsel should have moved to strike Juror 11 and, if she remained on the jury, moved for a mistrial, id.;

  (oo) The Sixth Amendment guarantees a right to a trial by an impartial jury, and the Supreme Court has explained that "due process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment", Morgan v. Illinois, 504 U.S. 719, 727 (1992);

  (pp) Our Court of Appeals has explained that juror bias may consist of "actual bias", or "a state of mind that leads to an inference that the person will not act with entire impartiality", and "implied bias", or "bias attributable in law to the prospective juror regardless of actual partiality", United States v. Mitchell, 690 F.3d 137, 142 (3rd Cir. 2012);

  (qq) In Mitchell, our Court of Appeals held that "implied bias remains available, in appropriate circumstances, to disqualify jurors whose connection with the litigation makes it

highly unlikely that they can remain impartial adjudicators", id. at 144, and it adopted the "close relative" standard that Justice O'Connor articulated in a concurrence in Smith v. Phillips, 455 U.S. 209 (1982), which identified, among the "extreme situations" that "justify a finding of implied bias", the case where "the juror is a close relative of one of the participants in the trial or the criminal transaction", id. at 143 (quoting Smith, 455 U.S. at 222) (O'Connor, J., concurring);

(rr) In adopting Justice O'Connor's formula, our Court of Appeals "reject[ed] the most expansive formulations that categorically presume bias whenever a juror shares any degree of kinship with a party in the case", id. at 146;

(ss) Relying on Mitchell, Judge Sitarski reasoned here that Juror 11's "tenuous connection to one of the victims was alone insufficient to create a presumption of bias", Nov. 12, 2013 R & R at 6, and there was nothing in the record to support a finding of actual bias, id.;

(tt) She thus found that counsel's failure to maintain a motion to strike Juror 11 or to later move for a mistrial did not constitute errors so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" under Strickland, and so found that Stanley did not have a meritorious ineffective assistance of counsel claim on this ground, see Nov. 12, 2013 R & R at 6;

(uu) We agree;

(vv) Stanley also argued that counsel was deficient for failing to raise a claim under Batson that race had motivated the failure to strike Juror 11, id. at 8 (citing Habeas Pet. at 6)

(ww) As Judge Sitarski explained, Stanley contended that, "Juror 11 was retained despite her bias only because the next alternate juror was African-American," id., but he provided

no evidence to support this contention, and "nothing in the record otherwise suggests that the decision was in any way racially motivated", id.;

   (xx) Judge Sitarski thus found, and we agree, that Stanley failed to demonstrate that the underlying claim of ineffective assistance of trial counsel on this basis was substantial;

   (yy) Judge Sitarski similarly found that Stanley had failed to provide any evidence to support his claim that trial counsel was ineffective for failing to "discover several witnesses who allegedly identified someone other than Petitioner as the perpetrator of the crimes for which he was being tried", id.;

   (zz) We agree with Judge Sitarski that Stanley has failed to demonstrate that his underlying claim is substantial because he has not "identif[ied] these alleged witnesses or the detectives who interviewed them, or provide[d] any other factual support for his allegations", id. at 9;

   (aaa) We turn to Stanley's Crawford argument, and because we diverge from Judge Sitarski's reasoning -- though not her conclusion -- on this point, we will address it at more length;

   (bbb) Stanley argued that trial counsel was ineffective because he failed to object when Anna Shenk -- one of the robbery victims -- provided hearsay testimony that violated Stanley's Confrontation Clause rights, as articulated in Crawford, id. at 6 (citing Habeas Pet. at 7);

   (ccc) Shenk, whose husband died between the time of the robbery and the trial, testified about her identification of Stanley when the police presented her with an eight-person photo line-up:

> A: First [the detectives] took the paper over to Morris and he looked at it and he's pointing. Then they brought the paper over to me and they said sign it if you recognize it and that's when I signed it.
>
> Q: Now, were you able to recognize one of those eight pictures as being the picture of the man who broke into your home and took your purse?
>
> A: Yes.
>
> Q: And were you able to identify that picture based on seeing Morris previously point to the picture?
>
> A: No, my own recollection.

Id. at 6-7 (quoting N.T. 5/31/2006 at 29);

   (ddd) The Confrontation Clause in the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him", and the United States Supreme Court has held that testimonial statements of witnesses who do not appear at trial may be admitted only if the declarant is unavailable and the defendant has had a prior opportunity to cross-examine him, Crawford, 541 U.S. at 59;

   (eee) Stanley argues that because Shenk's husband's death rendered him unavailable to appear at trial, and because Stanley did not have a prior opportunity to cross-examine him, his reaction to the photo array was improperly admitted[3];

---

[3] The Confrontation Clause applies only to "testimonial" statements, a definition that has eluded clear articulation. See, e.g., Crawford, 541 U.S. at 51 ("[v]arious formulations of this core class of 'testimonial' statements exist"); Michigan v. Bryant, 131 S. Ct. 1143, 1153 (2011) (canvassing the United State Supreme Court's efforts to define the categories of statements that are "testimonial"). Nevertheless, there is no question that a statement to the police concerning the identity of the perpetrator based on a photo array after the crime has concluded is testimonial within the meaning of Crawford. See, e.g., Crawford, 541 U.S. at 52 (offering one definition of "testimonial statements" as those "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial", and

(fff)   Judge Sitarski reasoned that trial counsel was not ineffective for failing to object to this testimony: "even assuming, arguendo, that trial counsel should have objected to this testimony on Sixth Amendment grounds, Petitioner was not prejudiced by his failure to do so" because "Ms. Shenk did not suggest that her husband recognized Petitioner as the perpetrator, or that he pointed at Petitioner's photograph; rather, Ms. Shenk stated only that her husband pointed to the photo array", and "[s]uch ambiguous testimony was not prejudicial to Petitioner", Nov. 12, 2013 R & R at 7; see also Order and Intent to Dismiss, Commonwealth v. Stanley, No. CP-06-CR-3610-04 at 9 (Pa. Ct. Com. Pl. Dec. 12, 2008) (applying similar analysis);

(ggg)   We disagree that the effect of Shenk's testimony was only that her husband had pointed broadly to the photo array -- one does not point to all eight pictures in a photo array, and the prosecutor confirmed the implication that Shenk and her husband had identified the same suspect by asking whether Shenk identified the defendant "based on seeing Morris point to the picture";

(hhh)   This testimony does appear to be potentially objectionable under Crawford;

(iii)   Nevertheless, we find under Strickland that trial counsel was not ineffective for failing to object;

(jjj)   After the PCRA Court appointed Deming to represent Stanley in his post-conviction proceedings, Deming filed a "No-Merit Letter" in which he addressed this issue -- he wrote that trial counsel's failure to object to this testimony could have been the product of sound trial strategy, and thus not deficient under Strickland: "Defense counsel could have objected after

---

noting that "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard.")

[Shenk] had made this unexpected statement and asked that it be stricken from the record along with a curative instruction to the jury to disregard the testimony", but "such a request might have drawn unwanted attention to this utterance", Oct. 31, 2008 No Merit Letter at 13;

(kkk)   As the United States Supreme Court explained in Strickland, in showing deficiency "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'", Strickland, 466 U.S. at 689;

(lll)   Stanley has failed to overcome that presumption here;

(mmm) Nor can Stanley sustain the prejudice prong because there is no dispute that Shenk's own identification was permissible under Crawford, and it is well-established that one eyewitness is sufficient to identify a defendant, see, e.g., United States v. Bamberger, 456 F.2d 1119, 1127 n.4 (3d Cir. 1972) ("[I]t is well established at common law . . . that ordinarily the testimony of one eyewitness is sufficient for the purpose of identification of the perpetrator of a crime") (quoting United States v. Johnson, 412 F.2d 753, 756 (1st Cir. 1969));

(nnn)   Thus, Stanley cannot demonstrate that had trial counsel objected, there is a reasonable probability that the outcome of the proceeding would have been different;

(ooo)   We therefore find that Stanley has failed to demonstrate the potential merit of his underlying ineffectiveness of trial counsel claims such that he can show cause based on ineffective assistance of PCRA counsel under Martinez, and we will thus deny his habeas petition;

(ppp)   Finally, Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit provides that "at the time a final order denying a habeas petition . . . is issued, the district court judge will make a determination as to whether a certificate of appealability should issue";

(qqq) Such a certificate should issue only if the petitioner demonstrates that "reasonable jurists could debate" whether the petition states a valid claim for the denial of a constitutional right, <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), and because the claims here were dismissed on procedural grounds, Stanley bears the additional burden of showing that reasonable jurists would also debate whether the procedural ruling was correct, <u>id.</u>; and

(rrr) We do not believe that reasonable jurists could debate the conclusion that Stanley's claims were procedurally defaulted and that he lacked cause excusing the default, and so we decline to issue a certificate of appealability;

It is hereby ORDERED that:

1. Petitioner's objections (docket entry # 34) are OVERRULED;

2. The conclusions of Judge Sitarski's report and recommendation (docket entry # 29) are APPROVED and ADOPTED;

3. For the reasons stated above, we DECLINE to issue a certificate of appealability; and

4. The Clerk of Court shall CLOSE this case statistically.

BY THE COURT:

<u>/s/ Stewart Dalzell, J.</u>